## City of Covington v. Willis et al.

(Decided May 27, 1938.)

RALPH P. RICH and GEORGE W. HILL for appellant.

FRANK HANLON and RICHARD KENKEL for appellees.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

The City of Covington has appealed from a judgment rendered against it in the Kenton circuit court awarding appellees $2,000 damages as result of an injury to their property resulting from the construction of a sewer through a public alley adjacent to appellees' property.

The petition alleges in substance, that appellees are and were at all times complained of, the owners of lot No. 7 of the Greenup Street Lot Company, First Subdivision, of the city of Covington. They further stated that the lot fronting 25 feet on the west side of Mackoy Street and extending back westwardly eighty feet more or less, to a point 100 feet east of Greenup Street and that there was at all times complained of a two-story frame house erected on said lot and appellees occupied the first floor of the house as their home and rented the second floor.

It is further alleged that at a regular meeting of the Board of Commissioners of the appellant held June 4, 1931, a resolution was duly passed, ordering the construction of a fifteen inch vitrified pipe sewer under the first alley south of 20th Street from the sewer line of Mackoy Street, to a point 75 feet west of the property line of the same street and that said alley is adjacent to appellees' property on the south, and was and is a public alley of the city; that pursuant to said resolution, in the month of August 1931, the city constructed the sewer in said alley and in the construction of same it excavated a ditch to a depth of approximately twenty feet below the surface of the ground adjacent to the property of appellees. They further alleged that the city negligently failed to properly shore up and protect the sides of the ditch or trench and as result thereof appellees' house was caused to crack and settle and the foundation thereof was cracked and settled and a rear room was caused to and did pull away from and become detached from the main portion of the said house and

that the doors and windows were sagged and the house was otherwise injured and damaged to the extent of $4,000, and prayed to recover that sum.

The city answered denying the allegations of the petition and further pleaded that appellees were guilty of contributory negligence in that they did not attempt in any manner to minimize the damages or take such steps as would be necessary to repair the continuing damages to their house. A reversal of the judgment is asked upon the sole ground that the court did not properly instruct the jury on the duty of appellees to minimize the damages complained of. To appraise the instruction a review of the evidence becomes necessary.

The substance of the evidence of appellees is to the effect that soon after the sewer was constructed in 1931, the house began settling or leaning and appellant city by its employees, repaired or attempted to repair it by raising it about two and a half inches. The foundation of the house was going down and, according to the evidence it was still settling and damages continuing at the time of the trial. It was further shown by the evidence of appellees that the house had broken in two places since the city had repaired it, and appellees had attempted to repair the doors which became out of order by reason of the settling of the house and the foundation thereof and perhaps attempted to make other minor repairs, but the house continued to settle and the damages were continuing and recurring. It appears that the city undertook to raise one room of the house but the witnesses said that "they made a mess of it and got the plastering off the walls in the back room". However, when the city raised the room they plastered and papered it and apparently it was in good condition at the time, but due to the sinking of the ground and foundation the house kept settling or sinking and the injuries thereto continued, and as result the whole house is out of line including the doors and windows, and one end of the house is considerably lower than the other end.

On cross-examination appellees were asked what they did during the time to alleviate or minimize the condition, and they said they did nothing except to attempt to repair the doors so they would close and perhaps other minor repairs. In response to questions, they said that they took no bids nor had any contractors to do any repairing during the four and a half years

intervening between the time the sewer was constructed and the time of filing the action.

The instruction given by the court on the duty of appellees to exercise ordinary care to minimize the damages, reads as follows:

"It was the duty of the plaintiffs to exercise ordinary care to minimize the damage, if any, to their property, resulting from, if it did result from, the excavation and construction of the sewer mentioned and described in the evidence and the plaintiffs may not recover for any damage resulting to said property from the excavation and construction of said sewer, if and to the extent that the exercise of ordinary care would have prevented said injury, if any, to said property."

Appellant insists that the above instruction did not go far enough, inasmuch as it is shown by appellees' testimony that for the period of four and a half years and while the damages were recurring and continuing they took no steps or action to minimize the same. It is insisted that the court should have specifically instructed the jury on the action appellees should have taken to minimize their damages, following in substance, the instruction approved by this court in the case of Petroleum Exploration v. White et al., 237 Ky. 10, 34 S. W. (2d) 738.

In that action it appears that in the construction of a pipe line over the land of White, fences were torn down and removed enabling White's cattle to escape from the pasture. White brought suit for the recovery of damages and depreciation in value of and injury to his cattle for the time they remained at large or out of the pasture. On appeal to this court we did not approve of the instructions as a whole given in that case by the lower court, but indicated that the following instruction should have been given:

"If the jury find for the plaintiff they will award them such a sum in damages as they may believe from the evidence was the reasonable value of the loss of weight, if anything, not to exceed one half herd together with cattle, which escaped not to exceed $25.00 and the difference, if any, between the fair market value of 77 cattle at the time they were returned to the pasture or could have been returned by the plaintiff by ordinary care and what the fair

market value of the cattle would then have been, had they not escaped from the pasture, taking into consideration the loss of weight, if anything, not to exceed 50 pounds per head and the loss, if anything, in the saleable value of the cattle by reason of the loss of weight, if anything, not to exceed one half a cent per pound, the whole of such loss, if anything, not to exceed $805.40.''

It is to be noticed that the facts and circumstances in the case supra, and the case at bar, are radically different. In the Petroleum Case supra, it is clear that the owner of the cattle should have used ordinary care in apprehending his cattle and returning them, and thus minimize the damages, if any, resulting to the cattle by reason of them having escaped from the pasture.

In the case at bar, we are unable to see what more appellees could have done to stop or minimize the damages. They had no right to enter upon the city's public property and excavate in the sewer ditch and brace or reinforce the sides or walls thereof. And furthermore, even though they had employed contractors to repair their building, still the damages would not have been stopped or indeed hardly minimized. It appears from the uncontradicted evidence that by reason of the deep ditch the ground upon which the house stood was sinking or settling and so long as that condition existed, it follows as a natural result that the house would continue to settle and the damages described by the witnesses would have continued, notwithstanding any repairs that might have been made. If the ground had stopped settling and the damages to the building had reached a fixed degree, and increased damages had resulted from the failure to repair the permanent condition, a different situation in regard to the duty of appellees to minimize such increased damages would have been presented. But it must not be overlooked that the damages had not reached a permanent or fixed status, but were continuing, resulting from the sinking of the ground on which the house stood, a condition over which appellees had no control. The evidence discloses that that condition existed from the time soon after the sewer was constructed to the time of filing of the suit and even at the time of the trial. It is shown that appellant had the house repaired soon after the sewer was constructed but the house continued to settle with the resulting damages to it described by the witnesses be-

cause of the sinking of the ground; and had appellees made repairs to the house, no different result could have been attained. The jury heard the evidence and under the instruction given it had the right to and perhaps did take into consideration what, if anything, appellees should or could have done in the exercise of ordinary care, to minimize their damages, and found a verdict accordingly. Appellees sued for $4,000 but the jury awarded them only $2,000, whereas it might have found more. Under the peculiar facts and circumstances of this case it is doubtful whether the jury should have been instructed at all in regard to the duty of appellees to minimize their damages, but inasmuch as the court gave an instruction on that question we think the one given is more favorable to appellant than it was entitled, in that, it left out the words "at a reasonable cost" thus submitting to the jury the duty of the appellees to minimize the damages regardless of cost. Under the authority of Johnson v. Ratliff, 233 Ky. 187, 25 S. W. (2d) 355, the omission of the qualifying words, "at a reasonable cost", was error, but this error was in favor of appellant.

Finding no error prejudicial to the substantial rights of appellant, the judgment is affirmed.